**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:24cv24421**

MARTIN S. BELZ,

Plaintiff,

v.

EVOLUTION METALS CORP.,
a Florida corporation,
and WILLIAM DAVID WILCOX, JR.,

Defendants.
_________________________________/

## COMPLAINT

Plaintiff Martin S. Belz ("Plaintiff' or "Belz") through undersigned counsel, files this Complaint against Defendants Evolution Metals Corp. ("Evolution") and William David Wilcox, Jr. ("Wilcox") (together, "Defendants"), and states as follows:

## NATURE OF THE ACTION

This is an action for breach of contract and fraud arising from a loan Defendants induced Belz to make through their brazen lies and misrepresentations.

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff is an individual over the age of eighteen (18), and a resident and citizen of the State of Tennessee.

2. Defendant Evolution is a Florida corporation with its principal place of business located at 516 S. Dixie Highway #209, West Palm Beach, Florida 33401. Evolution is engaged in the mining business.

3. Defendant Wilcox is an individual over the age of eighteen (18), and a citizen of

the State of Florida. Wilcox is the President and CEO of Evolution.

4. The Court has subject matter jurisdiction under diversity principles pursuant to 28 U.S.C. § 1332, because the matter in controversy exceeds $75,000.00 exclusive of interest and costs, and is between citizens of different States.

5. Defendants are subject to personal jurisdiction in this Court pursuant to their significant contacts with and activities in the State of Florida, including but not limited to, operating, conducting, engaging in, and carrying on a business or business venture in the State of Florida.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendants are residents of the State of Florida, a substantial part of the events or omissions giving rise to the claims occurred in Florida, and the agreements at issue provide for venue in the State of Florida.

7. All conditions precent to the filing of this action have been performed, satisfied, or waived.

## FACTUAL ALLEGATIONS

8. Plaintiff is the Chairman and President of the Peabody Hotel Group ("PHG"), which operates premier hotels throughout the United States, including the historic Peabody Hotel in Memphis, Tennessee. PHG is a division of Belz Enterprises, Inc., a developer of hotels, retail, and commercial properties.

9. As a successful businessman, developer, and executive in the hospitality industry, Plaintiff is always on the lookout for future development opportunities.

10. In or about September 2001, Plaintiff met Walter Berukoff ("Berukoff"), the Chairman of a Canadian company called Leisure Canada Inc. At the time Plaintiff met Berukoff, Leisure Canada had an agreement with the country of Cuba to develop mining, telephone, and



BERGER SINGERMAN
1450 BRICKELL AVENUE | SUITE 1900 | MIAMI, FLORIDA 33131-3453
t: 305-755-9500 | f: 305-714-4340 | WWW.BERGERSINGERMAN.COM

hotel opportunities on the island.

11. Plaintiff had previously traveled to Cuba to perform philanthropic work, and after meeting Berukoff, Plaintiff became interested in exploring potential hotel development opportunities in Cuba.

12. In the following years, Berukoff became more focused specifically on mining opportunities. In or about 2008 or 2009, Plaintiff met Guy Chartier ("Chartier"), a Director at Leisure Canada, who worked for Berukoff. Chartier focused specifically on opportunities to develop hotels in Cuba.

13. In or about 2011, Leisure Canada was acquired by Dundee Corporation. Chartier continued to explore hotel development opportunities in Cuba on behalf of Wilton Properties, a former subsidiary of Leisure Canada, and later, on his own.

14. With the goal that PHG would obtain hotel management and ownership benefits as a result, Plaintiff agreed in or about November 2017 to loan Chartier a portion of the funds necessary for Chartier's continued hotel development efforts in Cuba.

15. Between November 2017 and May 2019, Plaintiff loaned Chartier $550,000.00, which Chartier agreed to repay with interest ("Chartier Debt").

16. In or about late 2017, Plaintiff was introduced to Defendant Wilcox through a mutual acquaintance in the finance industry. Thereafter, Wilcox endeavored to locate and introduce potential equity investors for the development opportunities in Cuba that Chartier was working on with support from Plaintiff. Plaintiff met with Chartier and Wilcox in Cuba several times.

17. Wilcox, however, did not successfully secure any equity investors, so Plaintiff and Chartier continued to look for other sources of financing.



BERGER SINGERMAN
1450 BRICKELL AVENUE | SUITE 1900 | MIAMI, FLORIDA 33131-3453
t: 305-755-9500 | f: 305-714-4340 | WWW.BERGERSINGERMAN.COM

18. In or about June 2020, Wilcox contacted Plaintiff about his company, Evolution, and to request an equity investment from Plaintiff in Evolution. Chartier was also involved in Evolution. Despite repeated advances from Wilcox, Plaintiff declined to invest outright in Evolution.

19. Wilcox continued to contact Plaintiff over the next few weeks, and approached Plaintiff in early July 2020 with a proposal that instead of an equity investment, Plaintiff loan Evolution the amount of $200,000.00, which was to serve as a deposit into a Canadian court's registry in connection with a bid to obtain the assets and mining rights of North American Lithium, Inc. ("NAL"), another mining company that was in bankruptcy.

20. As material inducement for Plaintiff to make the loan, Wilcox represented to Plaintiff that the loan would be fully refundable if Evolution was not successful in its bid to acquire NAL. Wilcox repeated this representation in writing in a signed letter on behalf of Evolution, stating that "[t]he loan is solely for E[volution] M[etals] C[orp.]'s deposit at the court appointed monitor for the acquisition of NAL. The deposit is fully refundable and will be returned to you if we are unsuccessful at our acquisition." A true and correct copy of this letter is attached hereto as Exhibit "A" (the "Letter").

21. As a further inducement to Plaintiff to make the loan for the NAL deposit, Wilcox offered to, and did, personally guarantee the Evolution debt of $200,000.00. On information and belief, when seeking these funds from Plaintiff, Evolution and Wilcox had no intention of repaying Plaintiff.

22. In addition, Wilcox agreed that Evolution would assume the Chartier Debt, which Wilcox also agreed to personally guarantee. On information and belief, when assuming the Chartier Debt, Evolution and Wilcox had no intention of repaying Plaintiff.



BERGER SINGERMAN
1450 BRICKELL AVENUE | SUITE 1900 | MIAMI, FLORIDA 33131-3453
t: 305-755-9500 | f: 305-714-4340 | WWW.BERGERSINGERMAN.COM

23. As further inducement to Plaintiff, with an option of converting the loan to an equity investment in Evolution, Evolution hired Plaintiff as a consultant. Plaintiff regularly attended meetings of Evolution via video call, provided his experience and guidance, and assisted Evolution as requested.

24. On July 5, 2020, Plaintiff and Evolution executed a Demand Promissory Note (the "Note"). A true and correct copy of is the Note is attached hereto and incorporated herein as Exhibit "B."

25. On July 5, 2020, Wilcox executed an unlimited Guarantee Agreement in favor of Plaintiff (the "Guarantee"). A true and correct copy of the Guarantee is attached hereto and incorporated herein as Exhibit "C."

26. On July 6, 2020, Wilcox executed the Consulting Agreement on behalf of Evolution. A true and correct a copy of is the Consulting Agreement is attached hereto and incorporated herein as Exhibit "D" (the Note and Guarantee, together with the Consulting Agreements, the "Agreements").

27. The Agreements were drafted by Defendants.

28. The Note provides that Evolution "unconditionally promises to pay ON DEMAND to the order of Marty Belz . . ., in immediately available funds, . . . USD 200,000.00 and to pay interest on the unpaid principal amount hereof at the rates and on the dates specified . . . ." The Note also states that Evolution "in due course, agrees to pay an additional USD $550,000.00 to pay off the debt Guy Chartier owes [Belz]."

29. The Consulting Agreement provides that Evolution "will pay the Consultant a daily rate of $153.00" as a consulting fee.

30. Section 1.4 of the Guarantee provides that the Guarantee covers ". . . all obligations,

indebtedness, and liabilities of Debtor [Evolution] of every kind and character owed to Guaranteed Party [Plaintiff] . . . whether heretofore, now, or hereafter made, incurred, or created . . . ." Exhibit C.

31. The Guarantee also explicitly includes the "Loan Documents" in the obligations, which as defined includes the Note.

32. Evolution has failed to make payments in accordance with the Note and Consulting Agreement, and is in default.

33. Plaintiff has made demand on Defendants, but Defendants have failed and refused to make payment on the outstanding debt.

34. Evolution currently owes Plaintiff $750,000.00 in principal under the Note, plus unpaid interest, all of which is subject to Wilcox's personal guarantee.

35. As of September 30, 2024, Evolution currently owes $186,354.00 in consulting fees to Plaintiff, all of which is subject to Wilcox's personal guarantee.

**COUNT I**
**BREACH OF CONTRACT (NOTE)**
**(Evolution)**

36. Plaintiff incorporates the allegations in paragraphs 1 through 35 above as if fully set forth herein.

37. The Note is a valid and enforceable contract between Plaintiff and Evolution.

38. Evolution materially breached the Note by failing to pay Plaintiff the amounts due under the Note.

39. As a direct and proximate result of Evolution's breach of the Note, Plaintiff has suffered and continues to suffer damages.



BERGER SINGERMAN
1450 BRICKELL AVENUE | SUITE 1900 | MIAMI, FLORIDA 33131-3453
t: 305-755-9500 | f: 305-714-4340 | WWW.BERGERSINGERMAN.COM

**COUNT II**
**BREACH OF CONTRACT (CONSULTING AGREEMENT)**
**(Evolution)**

40. Plaintiff incorporates the allegations in paragraphs 1 through 35 above as if fully set forth herein.

41. The Consulting Agreement is a valid and enforceable contract between Plaintiff and Evolution.

42. Evolution materially breached the Consulting Agreement by failing to pay Plaintiff the amounts due under the Consulting Agreement.

43. As a direct and proximate result of Evolution's breach of the Consulting Agreement, Plaintiff has suffered damages.

**COUNT III**
**BREACH OF CONTRACT (GUARANTEE)**
**(Wilcox)**

44. Plaintiff incorporates the allegations in paragraphs 1 through 35 above as if fully set forth herein.

45. The Guarantee is a valid and enforceable contract between Plaintiff and Wilcox.

46. Wilcox materially breached the Guarantee by failing to pay Plaintiff upon demand the amounts due under the Note, which includes the Chartier Debt, and under the Consulting Agreement.

47. As a direct and proximate result of Wilcox's breach of the Guarantee, Plaintiff has suffered and continues to suffer damages.

**COUNT IV**
**FRAUD IN THE INDUCEMENT**
**(Wilcox and Evolution)**

48. Plaintiff incorporates the allegations in paragraphs 1 through 35 above as if fully

set forth herein.

49. Shortly before Plaintiff entered into the Agreements, Wilcox represented to Plaintiff that the loaned funds would be used solely as a deposit in connection with a bid to acquire NAL, and that if such bid were unsuccessful, the loan amount would be refunded in full to Plaintiff.

50. In the Letter, dated July 6, 2020, Wilcox, on behalf of Evolution, repeated the representation.

51. Shortly before Plaintiff entered into the loan transaction at issue, Wilcox represented to Plaintiff that Evolution would assume the Chartier Debt, and that Wilcox would personally guarantee the amounts due under the Note, which include the Chartier Debt, and the Consulting Agreement.

52. On or about July 5 and July 6, 2020, Wilcox repeated these representations in writing when Wilcox executed the Agreements.

53. These representations were false and made with the intent to induce Plaintiff to loan Evolution the amount for the deposit related to the NAL acquisition.

54. Defendants knew that these representations were false and had no intention to repay Plaintiff at the time they were made.

55. Plaintiff agreed to enter the Agreements with Defendants in reasonable reliance upon Defendants' false representations.

56. As a direct and proximate result of Defendants' false representations of fact, Plaintiff has suffered and continues to suffer damages.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter a judgment against Wilcox and Evolution for damages, interest, costs, and attorneys' fees, and such other and further relief as the Court deems just and proper.



BERGER SINGERMAN
1450 BRICKELL AVENUE | SUITE 1900 | MIAMI, FLORIDA 33131-3453
t: 305-755-9500 | f: 305-714-4340 | WWW.BERGERSINGERMAN.COM

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury for all claims triable as of right.

**BERGER SINGERMAN LLP**
1450 Brickell Avenue, Suite 1900
Miami, Florida 33131
Telephone: (305) 755-9500
Fax: (954) 523-2872

By: *s/ Marianne Curtis*
Marianne Curtis
Florida Bar No. 92729
mcurtis@bergersingerman.com
Ana E. Kauffmann
Florida Bar No. 89092
akauffmann@bergersingerman.com
mvega@bergersingerman.com
lmonteagudo@bergersingerman.com
drt@bergersingerman.com